IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID SCOTT GILLIAN,

    Plaintiff,          No. CIV S-04-1988 LKK DAD P

    vs.

WARDEN D.L. RUNNELS, et al.,

    Defendants.      FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with this civil rights action. At screening, plaintiff's complaint was dismissed with leave to amend. Plaintiff's amended complaint is before the court.

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) and (2).

        A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an

indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A claim fails to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). For screening purposes, the court accepts as true the allegations of the complaint. Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The court also construes the pleading in the light most favorable to the plaintiff and resolve doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The court may disregard allegations that are contradicted by facts established by exhibits to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Supervisory

personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In his amended complaint, plaintiff has sued four of the five defendants named in his original complaint. The four defendants are medical staff employed at High Desert State Prison: Dr. Rohlfing, orthopedic specialist; S.M. Roche, M.D., chief medical officer; P. Mangis, M.D.; and O. Dickinson, M.D. Plaintiff alleges general lack of treatment and negligence with regard to his back condition. Plaintiff also describes a period of excruciating pain in March 2003 when he aggravated his pre-existing back condition by fighting with his cell mate, and a delay in treatment between April 3, 2003, and May 8, 2003, when he was unable to see a doctor. Plaintiff alleges that he is continually aggravating his old injuries and continually seeking medical care. He admits that he has been treated over the years by various doctors for his complaints of back pain but claims most of the doctors have failed to provide him with adequate pain medication. Plaintiff disagrees with the observations, diagnoses, and treatment of the four defendants.

Plaintiff requests the following relief:

> I want the court to recognize that I've been deprived and denied treatment see Exhibit A and also I was deprived medication and treatment when I had to wait from 4-03-03 till 5-8-03 to be seen by a physician for very severe back pain after aggravating a pre-existing condition. And the fact that a delay in treatment exists see Exhibit B. I want stronger pain medication when it calls for it. I want an MRI done when it calls for it. I want physical therapy when it calls for it. And surgery when necessary. Also I want compensation for pain and suffering. I want a hearing. Egg crate mattress.

(Am. Compl. at third page.)

1    A prisoner's claim of inadequate medical care arises under the Eighth
2  Amendment.  The unnecessary and wanton infliction of pain constitutes cruel and unusual
3  punishment forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);
4  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).
5  In order to state a claim of cruel and unusual punishment, a prisoner must allege that he suffered
6  a sufficiently serious deprivation and prison officials acted with deliberate indifference in
7  allowing or causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

8    Where an Eighth Amendment claim is one of inadequate medical care, the
9  prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to
10 serious medical needs."  Estelle, 429 U.S. at 106.  Such a claim has two elements: "the
11 seriousness of the prisoner's medical need and the nature of the defendant's response to that
12 need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).  A medical need is serious "if
13 the failure to treat the prisoner's condition could result in further significant injury or the
14 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429
15 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition
16 that significantly affects an individual's daily activities."  Id. at 1059-60.  By establishing the
17 existence of a serious medical need, a prisoner satisfies the objective requirement for stating an
18 Eighth Amendment claim.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

19   In addition to establishing the existence of a serious medical need, the prisoner
20 must allege facts showing that prison officials responded to the serious medical need with
21 deliberate indifference.  Farmer, 511 U.S. at 834.  Deliberate indifference may be shown when
22 prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown
23 by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d
24 390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been
25 abridged with regard to medical care, however, "the indifference to his medical needs must be
26 substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

4

cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. However, to state a claim of deliberate indifference arising from delay, a plaintiff must allege facts showing that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir. 1981).

Plaintiff's original complaint included extensive documentation comprised of copies of plaintiff's inmate appeals, pre-incarceration medical records, and prison medical records. After careful consideration of plaintiff's documentation, the undersigned found that the allegations of the original complaint and the attached exhibits supported a conclusion that plaintiff's back condition constitutes a serious medical need. However, the undersigned found that plaintiff's exhibits did not support a conclusion that the defendants have responded to plaintiff's serious medical need with deliberate indifference:

> The non-CDC medical records provided as Exhibit A to plaintiff's complaint reveal that as early as 1993 and repeatedly in 1996 Dr. Gaston cautioned plaintiff against overusing Vicodin and reminded him of the principle of tolerance to painkillers. In 1996 she denied plaintiff's requests for Percoset. (Compl., Ex. A (Dr. Gaston's notes dated Oct. 17, 1996; Sept. 5, 1996; Feb. 12, 1996; Oct. 27, 1993; Sept. 10, 1993).) In 1997, Dr. Loosli urged plaintiff to

5

minimize pain medications, use his TENS unit, and do his exercises. In 1998, Dr. Loosli encouraged plaintiff to take Flexeril and not to take any Vicodin or pain pills. (Id. (Dr. Loosli's notes May 27, 1998, and Sept. 16, 1997).)

The CDC medical records provided as Exhibit B to plaintiff's complaint reflect that plaintiff has received extensive medical treatment, including medication, for his back while housed at High Desert State Prison. In 2002, Dr. Weaver instructed plaintiff in the back exercises he should do. (Compl., Ex. B (Dr. Weaver's notes June 19, 2002).) Six months later Dr. Rohlfing, a board-certified orthopedic specialist, described and demonstrated the exercises, anticipating significant benefit to plaintiff despite some initial increase in pain. (Id. (Dr. Rohlfing's notes Dec. 27, 2002).) Two months later, Dr. Westcott noted that plaintiff was taking excessive amounts of pain medications for his back; he instructed plaintiff on back and neck exercises and encouraged him to continue with his meditation. (Id. (Dr. Westcott's notes Mar. 12, 2003).) In May 2003, Dr. Dickinson noted overuse of pain medications. She advised plaintiff to do exercises to strengthen his back muscles, reassured plaintiff about his x-ray results and advised him not to overdose on his pain medications. (Id. (Dr. Dickinson's notes May 28, 2003).) In June 2003, Dr. Dickinson saw plaintiff for a complaint of severe back pain and muscle spasm. Plaintiff wanted his pain medication doubled. Dr. Dickinson advised plaintiff to take his medication as prescribed and cautioned him that he had been overdosing himself. She encouraged him to do his back exercises. (Id. (Dr. Dickinson's notes June 12, 2003).) In October 2003, Dr. Dickinson saw plaintiff in response to his inmate appeal regarding stronger pain medication and an orthopedic consult. After watching plaintiff come to the clinic and having observed him on the yard, she did not note any difficulty with mobility. She observed that plaintiff was comfortable in his chair and stood without obvious pain or difficulty. She found no objective indications consistent with pain but referred plaintiff for an orthopedic consult. (Id. (Dr. Dickinson's notes Oct. 24, 2003).) In November 2003, Dr. Dickinson showed plaintiff again how to do his back exercises. (Id. (Dr. Dickinson's notes Nov. 18, 2003).)

In November 2003, plaintiff was seen by Dr. Rohlfing. In response to plaintiff's request for an MRI, Dr. Rohlfing stated that there was nothing about plaintiff's back condition to suggest that an MRI would be of any benefit. Dr. Rohlfing's opinion based on 25 years of experience was that plaintiff's condition was not surgical and that surgery would be "almost contraindicated" in the absence of further conservative treatment. Dr. Rohlfing demonstrated the exercises plaintiff should be doing, observed that plaintiff's body language did not suggest significant pain, and explained his concern about considering surgery for a patient who is not in a great deal of pain. He told plaintiff that statistics show

1    exercise is the state of the art treatment for his condition. (Id. (Dr. Rohlfing's notes Nov. 19, 2003).)

2    On January 14, 2004, Dr. Rohlfing saw plaintiff for a follow-up appointment. He found that plaintiff walked and moved easily and did not appear to be in great discomfort. However, plaintiff could not do his back exercises when Dr. Rohlfing asked him to and could not even describe them, which led the doctor to conclude that plaintiff was not doing them. Dr. Rohlfing advised plaintiff again that exercises are the treatment of choice for his condition and "stressed to him that it is in the literature that this is what works if one does it." Plaintiff was advised that he is not a candidate for surgery or for any other treatment that is less likely to work if he will not do what is known to work. (Id. (Dr. Rohlfing's notes Jan. 14, 2004).)

On April 9, 2004, plaintiff admitted to Dr. James that he was not doing his exercises and in fact refuses to do them. When plaintiff also stated that he took Prilosec for GERD three at a time every few days instead of daily as prescribed, Dr. James cautioned plaintiff that he would not prescribe any more of that medication if plaintiff was not going to take it correctly or if he was noncompliant. (Id. (Dr. James' notes Apr. 12, 2004).)

The CDC medical records do not show or support an inference that any defendant has responded with deliberate indifference to plaintiff's serious medical need. The records do not demonstrate that plaintiff has a need for or will benefit from stronger pain medication, an updated MRI, unspecified physical therapy, a heating pad, a back brace, cortisone treatment, or surgery on his back. There is no basis for a conclusion that any defendant has denied, delayed, or intentionally interfered with necessary medical treatment or that any defendant has acted with substantial indifference to plaintiff's serious medical needs. Plaintiff's claims are based on nothing more than a mere difference of opinion between a prisoner and prison medical staff as to proper medical care.

(Order filed Nov. 22, 2004, at 6-8.)

The undersigned finds that the allegations of plaintiff's amended complaint, like those of his original complaint, fail to state an Eighth Amendment claim upon which relief may be granted. Plaintiff has alleged nothing more than a mere difference of opinion between a layperson and his treating physicians. Plaintiff has not cured the fundamental defect of his complaint and should not be given further leave to amend. See Coakley v. Murphy, 884 F.2d 1218, 1221-22 (9th Cir. 1989).

7

1   Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed
2  without prejudice for failure to state a claim upon which relief may be granted.
3   These findings and recommendations are submitted to the United States District
4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
5  days after being served with these findings and recommendations, plaintiff may file written
6  objections with the court.  A document containing objections should be titled "Objections to
7  Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file
8  objections within the specified time may, under certain circumstances, waive the right to appeal
9  the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
10 DATED: December 14, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
gill1988.56